Merilee DUNAHOO
*v.*
DEPARTMENT OF REVENUE
(TC 3778)

Jason R. Corey, The Dalles, represented plaintiff (taxpayer).

Marilyn J. Harbur, Assistant Attorney General, Department of Justice, Salem, represented defendant (department).

Decision for defendant rendered September 7, 1995.

**CARL N. BYERS, Judge.**

Taxpayer appeals defendant's order disqualifying her land for special assessment as forestland for 1994-95. Upon inspection, the assessor's office determined that the land did not qualify as forestland. Taxpayer claims she met

all of the requirements for special assessment and also claims that the assessor failed to fulfill his duties.

The subject property is approximately 10 acres, located about seven miles southwest of The Dalles. It is a long, narrow strip with one end fronting on Wells Road. The land is fairly level near the road, then inclines up a steep hill and levels out on the top portion of the property. The subject property is improved with a single-family residence near the road, thus excluding one acre from special assessment as a homesite.

The taxpayer purchased the property in the fall of 1990. The prior owner had applied for and received forestland designation in 1986. Although the property did not have sufficient trees to qualify as designated forestland, the prior owner submitted a management plan to qualify. The plan indicates that at the time of submission, about half of the property had an 80-year-old stand of mixed ponderosa pine and oak and the other half was range land. The plan states: "All but approximately one acre needs to be restocked and/or planted to complete the establishment of the woodland." The plan divides the subject property into three "islands" which consist of the bottom, middle and top portions of the land.[1] The bottom portion had over 100 trees per acre, for which the plan was to engage in selective cutting to replace the oak trees with ponderosa pine. The middle portion is so steep that it is inaccessible by vehicle and contained mostly oak trees. The plan called for this portion to be maintained for wildlife habitat and aesthetic purposes. The top portion of the property was accessible only through neighboring lands. The plan was to plant ponderosa pine, although the assessor recognized that the soil was dry and poor.

When taxpayer purchased the property, she wanted to continue the forestland designation. She went to the assessor's office and asked for information about the program. The assessor's office informed her there was a management plan on file but did not furnish her with a copy of

---

[1] In April 1987, the prior owner added an adjacent 15.05 acre tract to the plan, but that property is not owned by the taxpayer and not involved in this proceeding.

the plan. Taxpayer testified that she asked for rules governing designated forestland, but the assessor's office indicated they did not have copies to furnish her. Taxpayer filed her application on December 31, 1990, which was approved January 31, 1991. Her application indicated that she was "continuing the same management plan."

Since 1989 taxpayer's son lived in the residence on the property. After taxpayer purchased the property in 1990, he continued to live there and personally performed the work required to carry out the forest management plan. Taxpayer purchased 500 seedlings from a nursery and obtained an additional 520-plus trees from the forestry department. Taxpayer's son testified that he planted in excess of 1,000 trees in various parts of the nine acres and that he complied with the requirement of at least 100 trees per acre. He indicated that he planted the trees in the fall of 1991 and in the spring of 1992.

A representative from the assessor's office visited the property in the fall of 1993. He did not go on the lower portion of the property due to the presence of dogs and a fence. He did observe the lower portion of the property from adjacent land. He testified that he traversed most of the length of the land and did cross the fence and go onto the upper portion. He admitted that he could not inspect approximately three to four acres of the subject land. More importantly, he did not see any trees growing. He indicated that if trees had been planted and they had died, he would expect to see small sticks remaining. He admitted that it was possible that they had died and he did not see them. Because he did not see any green trees growing, he decided the land did not qualify as forestland.

The assessor's office sent taxpayer a notice of disqualification dated November 16, 1993. Taxpayer testified that she never received the notice. The notice was sent to her last-known address in The Dalles, but the taxpayer had moved to the state of Washington. The assessor's representative made no contact with either the taxpayer or her son when he inspected the property, and he left no notice or card indicating that he had been there. As a result, taxpayer was unaware of the action of the assessor until a second notice, dated June 1, 1994, was sent notifying her of the amount of

the deferred taxes owing and the real market value of the land. Taxpayer appealed from that notice to the department, which upheld the assessor's actions.

ORS 321.805 and related sections provide for special assessment of forestland. Special assessment allows for taxation of forestland at a small fraction of its real market value. By definition, forestland is land that is held or used for the predominant purpose of growing and harvesting trees of a marketable species. There are other conditions associated with obtaining special assessment. *See* ORS 321.805(1). Under the statutory scheme, the taxpayer must first apply for designation as forestland. ORS 321.815. If approved, the land remains assessed as designated forestland until it is removed from that designation. ORS 321.820 has several circumstances under which the designation will be removed, one of which is "[d]iscovery by the assessor that the land is no longer forestland." ORS 321.820(1)(b)(C). Removal of the designation by the assessor results in an additional tax being assessed against the property. ORS 321.825.

The primary issue presented is whether trees which are planted under a management plan must survive in order for the land to remain qualified for special assessment. The assessor is not convinced that the trees were planted. While that question of fact is disputed, it appears undisputed that the trees did not survive. All of the department's evidence indicated that if trees were planted, they did not survive. Taxpayer submitted no evidence that the trees were growing.

■ In order to qualify as designated forestland, land must be "used for the predominant purpose of *growing* and harvesting trees of a marketable species * * *." ORS 321.805(1) (emphasis added). The state forester, in implementing the state policies regarding forestland, has established rules setting forth a minimum number of trees per acre to qualify as forestland. If land, such as the subject land, fails to qualify because it lacks the required amount of trees per acre, the owner can submit a management plan. The management plan must state that the requisite number of trees will be planted within five years. OAR 150-321.805(3). Taxpayer claims the trees were planted and there is no legal requirement that they survive. The court finds that the basic test is whether the land is used for growing trees, not

whether it is used for planting trees. If trees are not growing, it is not forestland. The statute and the rules contemplate that trees which are planted will survive. The rule recognizes that some seedlings may not survive and indicates:

> "Extensions to planting requirements may be granted by the assessor if a loss of planted stock occurs due to conditions beyond the control of the land owner." OAR 150-321.805-(3)(d).

### Subsection 10 of the same rule states:

> "Any parcel of land, large or small, designated as forest land shall meet the minimum stocking requirements of section 2 or comply with section 3 of this rule."

■ In summary, it is not enough merely to plant trees. To qualify for designated forestland, planted trees must survive so they can become a forest. It is not surprising that taxpayer's seedlings did not survive. Both the assessor's representative, who had forestry experience, and the local state forester testified that most of the subject land was not suitable for growing merchantable timber. Even with extensive preparation, fertilizing and irrigation, it would be questionable whether the subject land could grow merchantable trees.

Taxpayer's evidence and arguments suggest that taxpayer should prevail because of shortcomings in the assessor's office. That is, the assessor's office failed to furnish her with copies of the rules and to timely notify her of disqualification. However, taxpayer neither pled nor proved estoppel or other equitable grounds which would support her position. In addition, taxpayer has not shown that the land would have qualified even if she had received the rules and the notice. The court finds that the department's Opinion and Order No. 94-4187 must be sustained. Costs to neither party.