IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

LAREN H. GARNER                          )
and PATRICIA D. GARNER,                  )
                                         )
            Plaintiffs,                  )    TC-MD 111166N
                                         )
      v.                                 )
                                         )
POLK COUNTY ASSESSOR,                    )
                                         )
            Defendant.                   )    **DECISION**

Plaintiffs appeal the disqualification of 17.00 acres of property identified as Account

306887 (subject property) from small tract forestland special assessment for the 2011-12 tax

year. A trial was held in the Tax Courtroom, Salem, Oregon on March 7, 2012. Plaintiff

Patricia D. Garner (Garner) appeared and testified on behalf of Plaintiffs. Douglas Schmidt

(Schmidt), Polk County Assessor, appeared and testified on behalf of Defendant. Plaintiff's

Exhibits I through IX were offered and received without objection. Defendant's Exhibits A1

through A29 and B1 through B9 were offered and received without objection.

## I. STATEMENT OF FACTS

Garner and Schmidt both testified that Plaintiffs initially applied for and were granted

forestland special assessment for the subject property in 2002. (*See* Def's Ex A at 5-11.)

Schmidt testified that Plaintiffs included a written forest management plan with their application

for forestland special assessment in 2002. (*See id.* at 8-9.) The "Forest land Management Plan"

states that "Doug Fir [would be planted] in higher elevation[s] with good drainage. Valley pine

to be planted in the lower, wetter areas." (*Id.* at 9.) The "[p]lanting completion date" is stated as

"01-2003." (*Id.*) Garner testified that Plaintiffs do not have a forest management plan.

/ / /

DECISION TC-MD 111166N                                                                    1

Garner testified that, in 2003, Plaintiffs planted Doug Fir on approximately four to five acres of the subject property. She testified that, at that time, Plaintiffs observed that a 10 to 12-acre field portion of the subject property had poor drainage and held water for about seven months of the year. Garner testified that Douglas Fir trees planted in that area were not able to survive due to the excessive water. On March 30, 2004, Plaintiffs filed for Small Tract Forestland special assessment for the subject property and an adjacent 4.85-acre parcel identified as Account 565616. (Def's Ex A at 12.)

On May 14, 2004, Defendant sent a letter to Plaintiffs stating that the subject property "failed to meet the requirements for Forestland Deferral[,]" citing specifically, "a burned stand of pines and dead and dying noble fir trees dispersed throughout the forested area." (Def's Ex A at 13.) Schmidt testified that, in response to Defendant's May 14, 2004, letter, Plaintiffs indicated that they would be contacting the Oregon Department of Fish and Wildlife (ODFW) regarding the possibility of special assessment for wildlife habitat conservation. (*See id.* at 1, 14.) Garner testified that, in 2004, Plaintiffs contacted ODWF regarding the "WHIP (Wildlife Habitat Incentive Program)." (*See* Ptfs' Ltr at 1, Feb 22, 2012.) She testified that Nancy Taylor (Taylor), ODFW, visited the subject property, provided Plaintiffs with additional paperwork, and told Plaintiffs that the subject property appeared to qualify for "WHIP." Garner testified that Taylor had agreed to contact Defendant and report that the subject property qualified for the program. Garner and Schmidt both testified that Defendant was never contacted by Taylor or ODFW and agreed that ODWF, apparently, "dropped the ball."[1]

Garner testified that, in 2006, Plaintiffs began an inquiry into whether the subject property might qualify for the Conservation Reserve Enhancement Program (CREP) with the

---

[1] Schmidt reported that Defendant "contact[ed] ODFW in 2005, 2006, 2007 about acceptance into WLH and [did] not get[] any answer from ODFW[.]" (Def's Ex A-1.)

Farm Service Agency (FSA) and Natural Resource Conservation Service (NRCS), US Department of Agriculture. She testified that Plaintiffs began working with Michael Ahr (Ahr) of NRCS and were "told not to plant anything in the area because this may not go alon[g] with their planting plan." (*See* Ptfs' Ltr at 1, Feb 22, 2012.) Garner testified that a wetland determination was completed for the subject property in 2007. (*See* Ptfs' Ex I.) Schmidt noted that, of the inventoried portions of the subject property, none were classified as "wetlands"; rather, the inventoried portions were classified as "Non-Wetland," "Farmed Wetlands Pasture," and "Prior Converted cropland." (*See id.*) Schmidt testified that each of those classifications allow farming. (*See id.*) He testified that there are species of trees that can be planted in wet areas and that Defendant previously recommended Plaintiffs contact the Oregon Department of Forestry.

Garner testified that, in 2008, Plaintiffs spoke with another ODFW biologist, Ann Kreager, who outlined additional requirements that Plaintiffs would have to meet in order to qualify for WHIP. Garner testified that it would be very costly to meet the requirements and, as a result, Plaintiffs elected not to pursue participation in WHIP; Plaintiffs notified Defendant of that decision. (Def's Ex A at 16.) On November 20, 2008, Defendant sent a letter to Plaintiffs referencing an agreement between the parties that Plaintiffs would "be planting trees on part of the property this winter [2008,]" and that Defendant would inspect the subject property the following year, at which time the parties would "agree to a 2 to 3 year plan to have the whole property planted in trees." (*Id.*) Defendant's November 20, 2008, letter warned that, "[i]f the [subject] property does not meet the proper stocking requirements of the new plan, the special assessment could be removed and back taxes collected." (*Id.*) Garner testified that, in 2009, Plaintiffs "planted a three acre parcel [of the subject property] and planted fill in trees in the

previous planting as well." (Ptfs' Ltr at 1, Feb 22, 2012.) She testified that, in 2009, Laren Garner became ill, so Plaintiffs' son helped complete the 2009 planting. (*See* Ptfs' Ex IX.)

Defendant inspected the subject property again in July 2010, and determined that Plaintiffs "failed to meet the requirements for Forestland and Small Tract Forestland Special Assessment." (Def's Ex A at 18.) At that time, Schmidt stated he would "re-inspect [the subject] property in 2011. If the planting, or replanting has not occurred, the acreage involved of approximately 25 acres will be disqualified from Forestland Special Assessment and Small Tract Forestland Special Assessment and the back taxes will be added to the next tax roll." (*Id.*)

Garner testified that, on September 8, 2010, Plaintiffs received notification "that the FSA had determined [Plaintiffs'] eligibility for the CREP program." (*See* Ptfs' Ltr at 2, Feb 22, 2012; Ptfs' Ex II.) On October 1, 2010, Plaintiffs "signed a CRP-2C offering 10.0 acres [of the subject property] for signup in CREP under the conservation practice CP-30, Marginal Pastureland Wetland Buffer." (Ptfs' Ex II.) Subsequently, Plaintiffs waited for a "conservation plan and planting specifications" from the NRCS. (*See id.*) Garner testified that, in July 2011, Defendant contacted Plaintiffs to inquire whether the conservation plan had been provided by the NRCS; it had not. (*See* Ptfs' Ltr at 2, Feb 22, 2012.) On August 2, 2011, Defendant disqualified 17 acres of the subject property from Small Tract Forestland special assessment. (*Id.*; Def's Ex A at 24.)

As of the date of trial, Plaintiffs had received the CREP requirements and planting plan, which stated a "Project Start" of March 2012. (*See* Ptfs' Ex VII.) Garner testified that the planting plan includes many trees. Schmidt testified that CREP is a separate program from forestland special assessment. He testified that the purpose of CREP is soil stabilization and habitat enhancement. Schmidt testified that the subject property may qualify for forestland special assessment in future tax years under Plaintiffs' CREP plan, but that is not yet clear.

Garner testified that she spoke with Schmidt in December 2011, regarding the possibility of qualifying the subject property for the farm use special assessment program. (*See* Ptfs' Ltr at 3, Feb 22, 2012.) She testified that, based on that conversation, she understood that, to qualify for farm use special assessment, Plaintiffs would need "15 cows or 75 goats on 15 acres to qualify for farm deferral." (*See id.*) Garner testified that it was too costly for Plaintiffs to comply with those requirements. She testified that she did not understand that Plaintiffs could avoid paying back taxes if they qualified for a different special assessment program within 30 days of the disqualification; Plaintiffs would have tried to establish goat farming on the subject property. Schmidt testified that the subject property is located within the exclusive farm use zone and, to qualify for farm use special assessment, need only meet the requirement of "farm use."[2]

Schmidt testified that it has previously been Defendant's policy not to disqualify properties that do not meet the requirements of farm or forestland special assessment while the property owner is seeking to qualify for a different special assessment program. He testified that, with respect to the subject property, Defendant has waited for ten years as Plaintiffs have sought to qualify for various special assessment programs and, on several occasions, agreed to plant trees in compliance with forestland special assessment requirements. Schmidt testified that, despite Plaintiffs' numerous agreements with Defendant to either meet the requirements of forestland special assessment or to qualify for a different special assessment program, neither had occurred as of August 2011, so Defendant disqualified the subject property. Garner testified that Plaintiffs have been working for ten years to "get something going" on the subject property

---

[2] Garner testified that she read a statute indicating that the subject property was required to meet income requirements for five years prior to qualifying for farm use special assessment. Schmidt testified that the income requirement is applicable to properties located in non-exclusive farm use zones, not the subject property.

and that she regrets that it has taken so long. She testified that, although the disqualified portion of the subject property is not planted with trees, Plaintiffs' request relief from the back taxes imposed because of the hardship that back taxes would impose on Plaintiffs.

## II. ANALYSIS

> " 'Forestland' means land in western Oregon that is being held or used for the predominant purpose of growing and harvesting trees of a marketable species and has been designated as forestland or land in western Oregon, the highest and best use of which is the growing and harvesting of such trees."

ORS 321.257(2); *see* ORS 321.700(6).[3] "The county assessor shall disqualify land as small tract forestland upon: * * * [d]iscovery by the assessor that the land is no longer forestland[.]" ORS 321.716(1)(b). Following disqualification from Western Oregon forestland special assessment, "an additional tax shall be added to the tax extended against the land on the next assessment and tax roll[.]" ORS 308A.703(2); *see* ORS 308A.703(1)(c).

Plaintiffs appeal Defendant's disqualification of the subject property from forestland special assessment for the 2011-12 tax year. Based upon personal hardship, Plaintiffs also contest the imposition of back taxes associated with disqualification. Plaintiffs have the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).

A.    *Disqualification*

In order to qualify for forestland special assessment, the property must meet minimum stocking and acreage requirements, established by the state forester. OAR 150-321.358(4)(1). Even if the property does not meet the minimum stocking and acreage requirements, it may still

---

[3] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) and the Oregon Administrative Rules (OAR) are to 2009.

qualify as forestland if the property owner "give[s] the assessor a written management plan for establishing trees to meet the minimum stocking requirements." OAR 150-321.358(4)(2); *see also Hoversland v. Washington County Assessor*, TC-MD No 031070B, 2005 WL 1083700 at *2 (Jan 27, 2005.) In addition to submitting a written management plan, the property owner's must meet the timeline requirements for planting set forth in OAR 150-321.358(4)(2)(d):

> "At least 20 percent, but not less than two acres, of the area in the plan must be planted by December 31 of the first assessment year that the land is designated as forestland. Each additional year thereafter, a minimum of 20 percent of the area must be planted. At the end of the fifth year after the assessor approves the designation, 100 percent of the area in the plan must be planted. The assessor may grant extensions to fulfilling planting requirements if a loss of planted stock occurs due to conditions beyond the control of the landowner."

*See also Dunahoo v. Dept. of Rev.*, 13 OTR 352, 355-56 (1995) ("the basic test is whether the land is used for growing trees * * *[i]f trees are not growing, it is not forestland").

The subject property originally qualified for forestland special assessment in 2002 and Plaintiffs submitted a management plan to Defendant at that time. Plaintiffs did not meet the requisite timeline for planting under OAR 150-321.358(4)(2)(d), which requires "100 percent of the area in the plan" to be planted within five years. Extensions are allowed at the discretion of the county assessor and Defendant granted extensions in 2004, 2008, and 2010. As of 2011, Plaintiffs had yet not planted trees on the subject property in accordance with their written management plan and have, instead, focused their energy and resources on qualifying the subject property for various other programs. For the 2011-12 tax year, the subject property does not meet the requirements of OAR 150-321.358(4) and disqualification was appropriate.

B.      *Imposition of additional tax following disqualification*

Plaintiffs request relief from the additional tax imposed under ORS 308A.703(2) based on financial hardship. ORS 308A.703(2) states that "an additional tax *shall* be added * * *."

(Emphasis added.) "Use of the word 'shall' makes clear that the addition of the taxes is mandatory." *Michel v. Jackson County Assessor*, TC-MD No 070674C, WL 4224968 at *2 (Nov 19, 2007). The court is not aware of any exception to imposition of the additional tax, for hardship or otherwise. The additional tax was lawfully imposed under ORS 308A.703(2) and Plaintiffs' request for relief from that tax must be denied.

III. CONCLUSION

The subject property does not meet the minimum stocking requirements under OAR 150-321.358(4) and Plaintiffs have not complied with the mandatory timeline for planting set forth under OAR 150-321.358(4)(2)(d), despite several extensions granted by Defendant. Accordingly, Defendant's disqualification of the subject property from forestland special assessment must be upheld. The additional tax imposed under ORS 308A.708 is mandatory and the court is not aware of any exception, for hardship or otherwise. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ___ day of July 2012.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on July 17, 2012. The Court filed and entered this document on July 17, 2012.*